Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000420
18-OCT-2013
08:32 AM

NOS. CAAP-12-0000420 and CAAP-12-0000604

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


THE ESTATE OF CHARLOTTE ANN BABA, DECEASED,
Plaintiff-Appellant,
v.
CRAIG E. KADOOKA, M.D., Defendant-Appellee,
and
DOE DEFENDANTS 1-20, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 09-1-0378)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Plaintiff-Appellant The Estate of Charlotte Ann Baba
(Estate) appeals from the "Order Granting Defendant Craig E.
Kadooka, M.D.'s Motion For Summary Judgment Filed On June 28,
2011" entered February 29, 2012 and the "Judgment" in favor of
Defendant-Appellee Craig E. Kadooka, M.D. (Dr. Kadooka) entered
April 2, 2012 in the Circuit Court of the Third Circuit[1] (circuit
court).

On appeal, the Estate contends the circuit court erred
when it found the six-year limitations period under Hawaii
Revised Statutes (HRS) § 657-7.3 (Supp. 2012) (statute of repose)

---

[1]  The Honorable Greg K. Nakamura presided.

expired and was not tolled, and granted summary judgment for Dr. Kadooka.[2]

## I.  BACKGROUND

On March 21, 2001, Charlotte Ann Baba (Ms. Baba) saw Dr. Kadooka for a pre-operation medical clearance.  An electrocardiogram (EKG) was performed on Ms. Baba's heart (March 21, 2001 EKG) and the computer reading indicated there was "sinus rhythm, leftward axis, contour abnormality consistent with inferior infarct, age unknown."  Dr. Kadooka crossed out the computer reading and wrote "WNL" (within normal limits).  In the medical records for the March 21, 2001 visit, Dr. Kadooka wrote: "Comparison to Prior EKGs: Same."

Ms. Baba continued to visit Dr. Kadooka for routine check-ups until September 20, 2002.  On December 11, 2002, Ms. Baba died of a heart-attack.  Two autopsies were performed on Ms. Baba, one on December 13, 2002 and another on January 9, 2003.  Both autopsies concluded Ms. Baba's death was heart-related.  Dr. Kadooka reviewed one or both reports but does not recall the date of his review.

In a letter dated October 28, 2004, Robert J. Segal, M.D., a medical expert for the Estate, advised the Estate to have physicians with relevant expertise review the quality of care Ms. Baba received.

On December 9, 2004, the Estate filed a claim with the Medical Claims Conciliation Panel (MCCP).  This claim was brought

---

[2]     The Estate's contention that its Medical Claims Conciliation Panel claims tolled the statute of repose is not considered on appeal as the issue was not raised below.  See State v. Moses, 102 Hawai‘i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases.").

Likewise, the Estate's constitutional arguments were not raised below and are not considered on appeal.  See State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) (the "question of the constitutionality of a statute cannot be raised for the first time on appeal.").

against five of Ms. Baba's doctors, including Dr. Kadooka, for "(1) undiagnosed hypothyroidism, (2) failure to refer to a thyroid specialist, (3) polypharmacy, and (4) failure of informed consent." On December 29, 2005, the MCCP ruled against the Estate. The Estate then consulted additional medical experts.

By October 27, 2007, one of the Estate's new medical experts, Adrian Schnall, M.D. (Dr. Schnall), informed the Estate that Dr. Kadooka misdiagnosed the March 21, 2001 EKG and deviated from the standard of care in his treatment of Ms. Baba thereafter (Dr. Schnall opinion).

On March 24, 2008, Appellant filed a second claim with the MCCP based on Dr. Kadooka's March 21, 2001 misdiagnosis. The MCCP dismissed the claim a year later, concluding the statute of limitations had expired.

On October 22, 2009, over six years after Ms. Baba's death, the Estate filed the complaint in the circuit court against Dr. Kadooka from which this appeal arises. The Estate alleged Dr. Kadooka's misdiagnosis of Ms. Baba's March 21, 2001 EKG was a fatal act of medical negligence and a proximate cause of her death. The Estate also alleged Dr. Kadooka deviated from the standard of care while treating Ms. Baba from March 21, 2001 until her death.

On June 28, 2011, Dr. Kadooka filed a Motion for Summary Judgment. On October 27, 2011, the circuit court entered an "Order Granting Extension of Time to Supplement Record." On October 29, 2011, Dr. Kadooka's deposition was taken. Dr. Kadooka testified that he believed his March 21, 2001 diagnosis of Ms. Baba's EKG was correct until he reviewed the January 10, 2011 letter from his own expert, John J. Cogan, M.D. (Dr. Cogan).

On February 29, 2012, the circuit court entered its "Order Granting Defendant Craig E. Kadooka, M.D.'s Motion For Summary Judgment Filed On June 28, 2011" and entered Judgment on April 2, 2012. The circuit court granted summary judgment on the

basis that the time in which the Estate could bring its medical malpractice claim had expired under HRS § 657-7.3. On April 26, 2012, the Estate filed a notice of appeal from the April 2, 2012 Judgment under No. CAAP-12-0000420.

On June 5, 2012, the circuit court entered an amended judgment for the award of costs per Rule 54(d)(1) of the Hawai'i Rules of Civil Procedure (HRCP), leaving the substantive adjudication from the April 2, 2012 Judgment undisturbed.[3] On June 28, 2012, the Estate appealed the amended judgment under No. CAAP-12-0000604. On September 17, 2012, per Hawai'i Rules of Appellate Procedure (HRAP) 45(f)(2),[4] this court consolidated the two appeals under No. CAAP-12-0000604.

## II. STANDARD OF REVIEW

We review summary judgments de novo. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

Under HRCP Rule 56(c), the circuit court must grant a motion for summary judgment when the moving party: (1) has shown that there is no genuine issue regarding any material fact, and (2) is entitled to judgment as a matter of law. "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Kamaka, 117 Hawai'i at 104, 176 P.3d at 103.

---

[3] The circuit court lacked jurisdiction to enter the amended judgment due to the appeal from the original judgment. See TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999). However, this court has jurisdiction over both appeals per HRS § 641-1(a) (Supp. 2012).

[4] The Estate's opening brief violates HRAP Rule 28(b)(3),(4), and (11) by failing to: (1) append copies of the judgments appealed from, (2) cite the record to support each statement of fact, (3) properly set forth the points of error, and (4) include a Statement of Related Cases. Based on our review of the record we conclude the non-compliance is not material in the circumstances of this case and our review reaches the merits. See Liki v. First Fire & Cas. Ins. of Hawaii, Inc., 118 Hawai'i 123, 126 n.3, 185 P.3d 871, 874 n.3 (App. 2008). Counsel for the Estate, however, is hereby warned that future violations may result in sanctions.

If the moving party meets its burden of production, the non-moving party must present admissible evidence showing specific facts about essential elements of each claim to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We view the evidence in the light most favorable to the non-moving party; factual inferences are made in favor of the non-moving party. See Kamaka, 117 Hawai'i at 104, 176 P.3d at 103.

Summary judgment is a drastic remedy and must be cautiously invoked to prevent the improper deprivation of a party's right to a trial on disputed factual issues. See GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995) aff'd, 80 Hawai'i 118, 905 P.2d 624 (1995). Summary judgment should only be granted if the entire record shows a right to judgment with "such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 91, 648 P.2d 689, 694 (1982) (internal quotation marks omitted).

### III. DISCUSSION

### A. HRS § 657-7.3 Statute of Limitations

There are two statute of limitations periods at issue in this case. HRS § 657-7.3 imposes a two-year statute of limitations and a six-year statute of repose. The two-year period begins when the "plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury[.]" HRS § 657-7.3. The six-year period starts on "the date of the alleged act or omission causing the injury or death." Id.

The legislature intended these limitations to balance the conflicting interests of preventing stale claims and ensuring that a party with a valid claim retains the opportunity to present it. See Yamaguchi, 65 Haw. at 91, n.10, 648 P.2d at 694, n.10.

5

The circuit court's grant of summary judgment in favor of Dr. Kadooka was proper unless a genuine issue exists about whether the statute of repose was tolled. The six-year statute of repose is "tolled for any period during which the person has failed to disclose any act, error, or omission upon which the action is based and which is known to the person." HRS § 657-7.3. The specific question before us is whether any genuine issue of material fact exists regarding Dr. Kadooka's alleged knowledge and failure to disclose. The circuit court held:

> [I]n order for the relevant tolling provision of HRS § 657-7.3 [] to apply, there must be a showing that [Dr. Kadooka] had actual knowledge of [his] tortious act and failed to disclose it.
>
> [Dr. Kadooka's] deposition testimony is that he did not believe that he was mistaken in his initial interpretation of the March 21, 2001 EKG results until after he reviewed the report of [Dr. Cogan]. Dr. Cogan's report is dated January 10, 2010. Therefore, based upon [Dr. Kadooka's] deposition testimony, it was after January 10, 2010, that he "accepted the fact" that he had "misinterpreted the [March 21, 2001] EKG[.]" []
>
> The [Estate] has not raised a genuine issue of material fact showing that [Dr. Kadooka] had actual knowledge of his misinterpretation of the EKG prior to the six-year period following March 21, 2001. For example, [the Estate] does not set forth any facts showing that [Dr. Kadooka] had a motive to knowingly place incorrect entries in the EKG printout and in Ms. Baba's medical records. It is implausible that [Dr. Kadooka] would knowingly alter the [March 21, 2001] EKG printout and provide an improper interpretation. This would have clearly have exposed [Dr. Kadooka] to a civil action by Ms. Baba or her personal representative and would not serve a useful purpose.
>
> It is true that [Dr. Kadooka] reviewed one or both autopsy reports. However, it does not set forth any evidence showing that [Dr. Kadooka] went back to look at the March 21, 2001 EKG printout after receiving the report or reports. The [Estate] does not set forth any evidence showing that [Dr. Kadooka] went back to review Ms. Baba's medical records after receiving one or both of the autopsy reports to see if he committed any errors in diagnosis or treatment. The [Estate] does not set forth any evidence which indicates that [Dr. Kadooka] had a habit of reviewing medical records of a patient who has died to see if he committed any errors in diagnosis or treatment.

(Emphasis added.)

This holding erroneously makes factual inferences in favor of Dr. Kadooka. "The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, and any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." GECC Fin. Corp., 79 Hawai‘i at 521, 904 P.2d at 535 (citation omitted).

Before the circuit court was evidence that Dr. Kadooka had: (1) interpreted Ms. Baba's March 21, 2001 EKG as normal where the computer reading indicated otherwise; (2) indicated the March 21, 2001 EKG results were the same as a prior EKG when the results actually differed; and (3) reviewed the autopsy reports indicating Ms. Baba suffered a heart-attack as early as December 2002.

The proper inference from these facts is that after Dr. Kadooka learned of Ms. Baba's heart-related death, he could have remembered altering the computer's interpretation of Ms. Baba's EKG, a heart-related test, and concluded his earlier interpretation was wrong. While it is reasonable to infer that he did not, at the summary judgment stage, the inference must favor the non-moving party. To infer that Dr. Kadooka, after reviewing Ms. Baba's autopsy, needed to review Ms. Baba's medical records to know that he committed an error is a factual inference in favor of the moving party.

Dr. Kadooka contends, and the circuit court found, that the Estate failed to bring forth admissible evidence showing specific facts creating a genuine issue about Dr. Kadooka's knowledge of the misdiagnosed March 21, 2001 EKG. This contention, however, is only relevant if the moving party meets its initial burden of production:

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. <u>Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts</u>, as opposed to general allegations, that present a genuine issue worthy of trial.

<u>GECC Fin. Corp.</u>, 79 Hawai'i at 521, 904 P.2d at 535 (internal quotation marks and citations omitted) (emphasis added).

Evidence presented by Dr. Kadooka to establish that no genuine issues of material fact existed was that: (1) he did not recall informing Ms. Baba that his EKG interpretation differed from the computer's interpretation; (2) Ms. Baba's medical records do not indicate she was so informed; and (3) he did not accept the fact that he misdiagnosed the March 21, 2001 EKG until he reviewed his expert's opinion in early 2011. Rather than showing an absence of a genuine issue of material fact regarding whether Dr. Kadooka knew and failed to disclose the misdiagnosed March 21, 2001 EKG, this testimony supports the conclusion that such an issue exists.

**B. Knowledge of the Misdiagnosis**

Given that the six-year statute of repose was tolled by Dr. Kadooka's failure to disclose per HRS § 657-7.3, the next question is when did the Estate have actual or constructive knowledge of the misdiagnosed March 21, 2001 EKG?

Tolling of the statute of repose ceases when the plaintiff acquires actual knowledge of the negligent act. <u>See Yamaguchi</u>, 65 Haw. at 92, 648 P.2d at 694 ("His claim as to the misdiagnosis, moreover, is not saved by the statutory tolling provision, since appellant had acquired actual knowledge of the alleged negligent act from an independent source in 1961, negating the defendants' duty to inform him of the same from that date.").

8

Reviewing the evidence in the light most favorable to the Estate, we conclude its complaint was filed within the six-year statute of repose. The statute of repose began on March 21, 2001, the date of the EKG misdiagnosed by Dr. Kadooka, and ran for approximately two years before it was tolled from around December 13, 2002 or January 9, 2003, when Dr. Kadooka received Ms. Baba's autopsy reports and reviewed one or both, to about October 27, 2007, when the Estate received the Dr. Schnall opinion; the statute of repose resumed running thereafter and did not expire before the Estate filed its claim in circuit court.

The two-year statute of limitations period begins when the "plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage." See Jacoby v. Kaiser Found. Hosp., 1 Haw. App. 519, 525, 622 P.2d 613, 617 (1981).

Reviewing the evidence in the light most favorable to the Estate, we conclude its complaint was filed within the two-year statute of limitations. The two-year statute of limitations period began around October 27, 2007, when the Estate received the Dr. Schnall opinion, and ran for approximately six months until March 24, 2008, when the Estate filed its second MCCP Claim, and was tolled during the pendency this claim,[5] then ran

---

[5]    HRS § 671-18 (Supp. 2012) provides in relevant part:

§671-18 Statute of limitations tolled. The filing of the inquiry with the medical inquiry and conciliation panel . . . shall toll any applicable statute of limitations, and the statute of limitations shall remain tolled until sixty days after the termination of the panel . . . . If panel proceedings are not completed within twelve months, . . . the statute of limitations shall resume running and the party filing the inquiry may commence a suit based on the circumstances related to the inquiry in any appropriate court of this State."

However, HRS § 671-18 does not toll the six-year statute of repose. When the MCCP statute was amended in 1980, the Hawai'i legislature noted that S.B. No. 3003-80 would allow the statute of limitations to be

(continued...)

for about another six months before the instant complaint was filed, well within the two-year statute of limitations. We are therefore unable to conclude that the Estate cannot prevail under any circumstance, precluding summary judgment.

### IV. CONCLUSION

Accordingly, the Judgment entered April 2, 2012 and the Amended Judgment entered June 5, 2012 in the Circuit Court of the Third Circuit are vacated and this case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawaiʻi, October 18, 2013.

On the briefs:

Charles H. Hurd
and
Lane Y. Takahashi
for Plaintiff-Appellant.

Jeffrey S. Portnoy
Marion L. Reyes-Burke
Cheryl A. Kinoshita
(Cades Schutte)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[5](...continued)
tolled for no more than eighteen months, and would allow the party filing the claim to commence suit after such eighteen-month period "but within the balance of the original two-year period of limitation the party had before the tolling was commenced." See S. Stand. Comm. Rep. No. 546-80, in 1980 Senate Journal, at 1252 (emphasis added). The eighteen month period was later reduced to twelve months. See H. Stand. Comm. Rep. No. 959, in 2003 House Journal, at 1467.